UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

SHERMAN MITCHELL SIMS,

Plaintiff,

v.

ROBERT TREALOFF,

Defendant.

Civil No. 00-182 (PAM/FLN)

**REPORT AND RECOMMENDATION**

---

Plaintiff, an inmate at the Minnesota Correctional Facility in Stillwater, Minnesota, ("MCF-STW"), brought this action under 42 U.S.C. § 1983, claiming that Defendant violated his federal constitutional rights. Defendant has filed a motion for summary judgment, (Docket No. 7), which is supported by a memorandum of law and various affidavits and exhibits, (Docket Nos. 8-12). Plaintiff has filed two responses to Defendant's motion, (Docket Nos. 13 and 15), but neither of those responses includes any evidentiary material.

This matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, it will be recommended that summary judgment be entered in favor of Defendant and that this action be DISMISSED WITH PREJUDICE.

## I. FACTUAL BACKGROUND

Plaintiff is a prisoner of the State of Ohio who is currently serving his Ohio prison sentence, (99 years for first degree murder), at MCF-STW. In January 1999, Plaintiff's prison Case Manager, Tracy Hosking, prepared Plaintiff's "Annual Institutional Progress Review," which is a written report describing an inmate's "activity and progress in the areas

JUN 04 2001
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

of treatment, education, employment and discipline." (Affidavit of Tracy Hosking, ["Hosking Aff."], [Docket No. 12], ¶s 2-3.) Before completing her report, Hosking called the prison industry department to find out how Plaintiff was doing at his prison job. Defendant Robert Trealoff, a correctional officer at MCF-STW answered Hosking's call. Hosking initially asked to speak to Plaintiff's shop foreman, but when she found out the foreman was unavailable, she asked Defendant Trealoff whether he had any opinion about Plaintiff's job performance. Trealoff told Hosking that Plaintiff "was a hard worker but that he had a tendency to be verbally abusive when confronted about matters of work." (Affidavit of Robert Trealoff, ["Trealoff Aff."], [Docket No. 11], ¶ 4.) Hosking incorporated Trealoff's comment into a preliminary draft of her report.

Before Hosking's draft report was finalized, she invited Plaintiff to review it with her. Plaintiff challenged Defendant Trealoff's characterization of his job performance, and Hosking agreed that it would be better to base that section of her report on information obtained directly from Plaintiff's shop foreman. The first draft of the report, reflecting Defendant Trealoff's comments, was destroyed before any copies of it were distributed to anyone. (Hosking Aff., ¶ 7.)

When Hosking contacted Plaintiff's shop foreman, he reported that Plaintiff's "work was good but that he had difficulties dealing with officers." (Hosking Aff., ¶ 4.) Hosking's final report on Plaintiff's job performance reflected only the opinion expressed by the foreman. The relevant portion of the final report reads as follows:

> "[Plaintiff's] supervisor states that he receives overall above average evaluations and performs well. The supervisor states that [Plaintiff] does have some difficulties with some officers in the area but feels that this does

not affect [Plaintiff's] job performance."

(Hosking Aff., Exhibit A.)

On May 6, 1999, (several months after Hosking's report was completed), Defendant Trealoff found Plaintiff away from his work station, visiting with other prisoners, when he should have been working. When Defendant Trealoff pointed out that Plaintiff was supposed to be working, Plaintiff "became verbally antagonistic and explosive with an 'I'll-get-to-it-when-I-feel like it' kind of attitude." (Trealoff Aff., ¶ 6.) Trealoff recommended that Plaintiff should be suspended from his job for two days because of his conduct, and the foreman and two other supervisors agreed. (Id.)

At the end of his two-day suspension, Plaintiff was given a termination notice, informing him that he was being permanently removed from his prison job. The decision to permanently suspend Plaintiff from his job was made by Foreman Bart Urich and Industry Supervisor Mick Swiontek. (Id., ¶ 7.) The termination notice describes the reason for the termination as follows:

> "Unruley [sic] behavior towards staff and officer per Discipline Regulations #26 & #32. [Plaintiff's] behavior has been like this for the past 2½ weeks leading up to this date."

(Trealoff Aff., Exhibit C.) The termination notice was signed by Bart A. Urich and Mick Swiontek.

Plaintiff is now suing Defendant Trealoff under 42 U.S.C. § 1983, for allegedly violating his federal constitutional rights. Although Plaintiff's complaint does not cite any specific provision of the Constitution, Defendant assumed for purposes of his summary judgment motion that Plaintiff's claims are based on the Fourteenth Amendment's Due

Process Clause. In his response to that motion, Plaintiff affirmed that he is indeed seeking relief for alleged violations of his right to due process. ("Plaintiff's Response To Defendant's Motion For Summary Judgment," [Docket No. 15], ¶ 5.)

Plaintiff is asking for an award of compensatory damages in the amount of $5000, plus "court costs" and "attorney fees." He is also asking for injunctive relief that would (a) "prevent[ ] Defendant Trealoff from submitting false reports against him to any and all employees to insure that this information is not forwarded to the Ohio state parole authorities, and (b) "direct[ ] [MCF-STW] to remove any and all referrences [sic] to this report from his base file and that a letter be forwarded to the Ohio officials so that they can correct his files." (Complaint attachment, [Docket No. 1], ¶s 16 and 17.)

## II. STANDARD OF REVIEW

In considering a motion for summary judgment, the Court is to determine whether there are any genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). When there is no reasonable construction of the facts that would allow the nonmoving party to prevail, the remedy of summary judgment is appropriate. Matsushita, 475 U.S. at 587-88. The role of the court is not to weigh the evidence, but to determine whether, as a matter of law, a genuine factual conflict exists. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). In making this determination, the court is required to view the evidence in the light most favorable to the nonmoving party and to give that party the benefit of all reasonable inferences that can be drawn from the facts. Id.

If a motion for summary judgment is properly made pursuant to Rule 56(c) with affidavits or other evidence, the nonmoving party must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324; Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc., 824 F.2d 582, 585 (8th Cir. 1987), cert. denied, 484 U.S. 1010 (1988). The nonmoving party may not merely rest upon the allegations or denials in his pleadings. Id.

The Court is mindful that pro se pleadings should be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); White v. Bond, 720 F.2d 1002, 1003 (8th Cir. 1983). Therefore, pro se pleadings are held to less stringent standards when challenged by motions to dismiss or for summary judgment. Haines, 404 U.S. at 520; Horsey v. Asher, 741 F.2d 209, 211 n.3 (8th Cir. 1984). Nonetheless, a pro se plaintiff's claim cannot survive a motion for summary judgment unless, in some form, he can fairly be said to have set forth specific facts demonstrating that there is a genuine issue for trial. Quam v. Minnehaha County Jail, 821 F.2d 522 (8th Cir. 1987); Miller v. Solem, 728 F.2d 1020, 1023, (8th Cir.), cert. denied, 469 U.S. 841 (1984).

## III. DISCUSSION

Plaintiff appears to be claiming that Defendant violated his right to due process on two occasions: first, when Defendant told Plaintiff's case manager, in January 1999, that Plaintiff was a hard worker, but had "a tendency to be verbally abusive when confronted about matters of work;" and second, when Defendant told Plaintiff's work supervisor, in May 1999, that Plaintiff had become "antagonistic and explosive" when he was told that he should be working in his shop area instead of visiting with others. For the reasons

discussed below, the Court finds that Defendant did not violate Plaintiff's due process rights on either of those two occasions.

To sustain a Fourteenth Amendment due process claim, a prisoner must show that he has been deprived of some constitutionally protected interest. Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake"). In this case, Plaintiff has not clearly identified the specific interest(s) on which his due process claims are based. The Court can only assume that he is claiming to have a constitutionally protected liberty interest in (a) having a prison deportment record that does not include negative opinions, and (b) retaining a prison job to which he has been assigned. While these matters are undoubtedly important to Plaintiff, they do not qualify as "liberty interests" that warrant the protections of due process. Furthermore, the record shows that Defendant did not deprive Plaintiff of either of those two interests.

A constitutionally protected liberty interest will be found, and the protections of due process will therefore come into play, only when a prisoner has shown the type of unusual hardship or dramatic departure from ordinary prison life that is contemplated in Sandin v. Conner, 515 U.S. 472 (1995). There, the Supreme Court held that a prisoner cannot sustain a due process claim unless he can show that he suffered an "atypical and significant hardship... in relation to the ordinary incidents of prison life." Id. at 484. In Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996), our Court of Appeals interpreted Sandin to mean that prisoner due process rights are implicated only when there have been "deprivations which work such major disruptions in a prisoner's environment and life that

they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." (Emphasis added.) Plaintiff cannot maintain a due process claim based on the facts of record here, because he cannot show that he has suffered the type of severe hardship that Sandin requires.

A. The January 1999 Incident

Plaintiff initially claims that Defendant violated his right to due process in January 1999, by telling Case Manager Tracy Hosking that Plaintiff was a hard worker, but tended to be "verbally abusive when confronted about matters of work." This claim fails for two reasons.

First, Plaintiff's claim is based on the erroneous belief that he has a constitutionally protected liberty interest in keeping his prison records free of negative opinions by prison staff members. Plaintiff has cited no federal law recognizing such a novel interest -- which is hardly surprising. Inmates must expect prison officials to maintain records that include reports on their behavior. It is hard to imagine a more ordinary incident of prison life. Prisoners must also expect that such reports will sometimes include negative opinions, such as those that Defendant expressed to Plaintiff's case manager in January 1999. However, the mere inclusion of such opinions in an inmate's prison records, without more, cannot be viewed as a "severe hardship" or a "dramatic departure" from the "ordinary incidents of prison life." Therefore, under the Sandin test, no protected liberty interest is implicated when such opinions appear in a prison record.[1] Because Plaintiff has no liberty

---

[1] This is not to say that no due process claim could ever be based on information appearing in an inmate's prison records. If a record included false factual information, (as opposed to a negative opinion), and if an inmate suffered some "severe hardship" as a

interest in excluding negative opinions from his prison records, he is not entitled to the protections of due process before such opinions can be included in such records.

Furthermore, the record in this case clearly shows that the Defendant's opinion about Plaintiff's work performance, as expressed to Case Worker Hosking in January 1999, was not included in Plaintiff's prison record. Hosking has stated -- without contradiction by Plaintiff -- that Defendant's opinion was removed from her draft of Plaintiff's "Annual Institutional Progress Report" before that draft was disseminated to anyone. Moreover, a copy of the report is attached to Hosking's affidavit, and it includes no mention of Defendant's opinion regarding Plaintiff's work performance. Therefore, even if Plaintiff did have a liberty interest in keeping Defendant's opinion out of his prison records, his due process claim would still fail, because he was not deprived of that interest.

B. The May 1999 Incident

The only other "hardship" suggested by Plaintiff's complaint is the loss of his prison job in May 1999. Plaintiff apparently believes that Defendant caused him to lose his job by reporting Plaintiff's impertinent response to Defendant's reminder that he should go to work. Plaintiff also apparently believes that he has a protected liberty interest in retaining his job, and that he could not be deprived of that interest without being afforded due process. Plaintiff's second due process claim, like the first, fails for two reasons.

---

direct result of such false information, then the inmate might have grounds for bringing a due process claim. Such circumstances, however, are not presented here. Plaintiff has not identified any false facts in his prison record, nor has he shown that any facts reported in his prison record have caused him to suffer any severe hardship.

First, the loss of a prison job does not constitute the type of dramatic departure from the ordinary conditions of prison life that was contemplated by the Supreme Court in Sandin. Prisoners are frequently denied employment opportunities for many different reasons, and such events are not considered to be an "atypical and significant hardship" or a "dramatic departure" from the ordinary conditions of a prison sentence. Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 669-70 (8th Cir. 1996); Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997). Thus, under the Sandin test, Plaintiff had no constitutionally protected liberty interest in retaining his prison job. It follows that he was not entitled to the procedural protections of due process before being removed from his job.

Furthermore, even if the loss of a prison job did implicate a protected liberty interest, Plaintiff still would not have a viable due process claim here, because the evidence shows that Defendant did not deprive Plaintiff of his prison job. Although Defendant reported Plaintiff's insolence to Plaintiff's job supervisors, the record clearly shows that Defendant himself did not remove Plaintiff from his job. The decision to remove Plaintiff from his job was not made by Defendant, but by others, namely Bart Urich and Mick Swiontek.[2] Therefore, even if Plaintiff had a protected interest in retaining his job, he would not have a viable due process claim against Defendant.

---

[2] Moreover, it appears that Defendant's report to Plaintiff's job supervisors played little, if any, role in their decision to remove Plaintiff from his job. According to the written termination notice, Plaintiff lost his job because a pattern of unruly behavior that occurred during a 2½ week period preceding the termination.

## IV. CONCLUSION

In sum, the evidence of record clearly demonstrates that Defendant did not cause Plaintiff to be deprived of any constitutionally protected liberty interest. Thus, the Court concludes that Plaintiff cannot maintain a § 1983 claim against Defendant based on an alleged violation of his constitutional right to due process. Defendant is therefore entitled to summary judgment.

In fact, the Court finds that Plaintiff's claims should be identified as "frivolous," because they are wholly devoid of any basis in fact or law. See Neitzke v. Williams, 490 U.S. 319, 325 (1989) (an action is frivolous "where it lacks an arguable basis either in law or in fact"). This means that the present action should be counted as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g).[3]

Notwithstanding the dismissal of this action, Plaintiff shall remain liable for the unpaid balance of the $150 filing fee.[4] He has paid only $12.00 so far, so he still owes

---

[3] Section 1915(g), which was enacted as part of the Prison Litigation Reform Act of 1995 ("PLRA"), provides that:

> "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [i.e., the IFP statute -- 28 U.S.C. § 1915] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."

[4] Under the PLRA, prisoners may be excused from pre-paying the full amount of the applicable filing fee before filing an action. However, 28 U.S.C. § 1915(b) clearly states that prisoners "shall be required to pay the full amount of the filing fee." In other words, prisoners are permitted to file actions without paying the full filing fee in advance, but they still remain liable for the fee. Ashley v. Dilworth, 147 F.3d 715, 716 (8th Cir. 1998)

$138.00. Prison officials will have to deduct that amount from his prison trust account and pay it to the Clerk of Court in the manner prescribed by 28 U.S.C. § 1915(b)(2).

Finally, the Court notes that Plaintiff's two submissions in opposition to Defendant's summary judgment motion, (Docket Nos. 13 and 15), each include a statement indicating that Plaintiff "moves the court for an order in which Plaintiff is allowed to submit amended complaint as opposed to defendant's summary judgment." If that statement is intended to be a formal motion seeking leave to file an amended complaint in this action, the Court recommends that such motion be denied, for two reasons. First, the "motion" does not comply with Local Rule 15.1, which requires that –

> "A party who moves to amend a pleading shall file an original and two copies of the motion to amend, and shall attach a copy of the amended pleading to the original motion and to each copy of the motion. If the Court grants the motion to amend, the moving party shall file the original of the amended pleading with the Clerk of Court. Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must, except by leave of Court, reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference." (Emphasis added.)

Plaintiff has failed to comply with this rule because he has not attached a copy of his proposed amended complaint to his "motion to amend." Furthermore, leave to amend will not be granted when it is apparent that any attempted amendment would be futile. Williams

---

("[t]he purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time"). Nothing in the PLRA suggests that the dismissal of a prisoner's action would extinguish the ultimate obligation to pay the filing fee. See In re Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997) ("the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal").

v. Little Rock Municipal Water Works, 21 F.3d 218, 225 (8th Cir. 1994). In this case, the Court is satisfied that Plaintiff could not possibly plead an actionable § 1983 claim based on the facts and circumstances of record. For this additional reason, Plaintiff should not be granted leave to amend.

## V. RECOMMENDATION

Based upon the above, and upon all of the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

1. Defendant's Motion For Summary Judgment, (Docket No. 7), should be GRANTED;

2. Plaintiff should not be permitted to file an Amended Complaint;

3. The action should be DISMISSED WITH PREJUDICE;

4. The action should be dismissed on the grounds that it is "frivolous," so that the dismissal of this action will be counted as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g); and

5. Notwithstanding the dismissal of this action, Plaintiff should remain liable for the unpaid balance of the filing for this action, namely $138.00, which should be paid in installments pursuant to 28 U.S.C. § 1915(b)(2).

Dated: June 4, 2001

FRANKLIN L. NOEL
Chief Magistrate Judge

Under D.Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by 6-20-01, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.